UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 11-11859-MLW |
| | ) | |
| BOSTON PUBLIC HEALTH | ) | |
| COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER
## ON PLAINTIFF'S EMERGENCY MOTION TO COMPEL

October 7, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Christine Hayes ("Hayes"), has brought this action pursuant to Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Mass. Gen. Laws ch.

151B, against the Boston Public Health Commission ("BPHC" or "Commission"), its

Executive Director, Barbara Ferrer ("Ferrer"), its former General Counsel, Nakisha

Skinner ("Skinner"), and its Director of Human Resources, David Pia ("Pia").  Hayes,

who describes herself as white, claims that while she was employed as a Deputy General

Counsel of the Commission, BPHC and Ferrer engaged in race discrimination against her

by passing her over for a promotion and instead appointing Skinner, an African-American

woman, to the position of General Counsel based upon Skinner's race.  In addition,

Hayes claims that the defendants unlawfully terminated her employment at BPHC in

retaliation for her efforts to seek legal recourse for the alleged discrimination by filing

charges with the Massachusetts Commission Against Discrimination ("MCAD") and the

Equal Employment Opportunity Commission, and initiating the present litigation.

  The defendants deny that their actions were discriminatory or otherwise unlawful.

They also contend that Hayes was terminated because BPHC lost trust and confidence in

her ability to serve as its counsel after learning that she had accessed and disclosed to her

attorney, for her personal use in connection with this lawsuit, the terms and conditions of

a settlement agreement ("Settlement Agreement") between the Commission and one of its

employees, John Georges ("Georges").  The Settlement Agreement, which resolved a

lawsuit in which Georges had claimed that the Commission discriminated against him on

the basis of his gender and sexual orientation, contained a confidentiality provision.

However, Hayes denies that she did anything improper, and alleges that the defendants

are accusing her of wrongdoing as a pretext to justify their retaliatory conduct.

  During discovery in the instant case, Hayes conducted the deposition of Fatema

Fazendeiro, BPHC's current General Counsel and the attorney who negotiated and

drafted the Georges Settlement Agreement on behalf of the Commission.  Although

Attorney Fazendeiro answered questions relating directly to the plaintiff's claims, she

refused, on the advice of counsel, to respond to any questions regarding the terms of the

Georges Settlement Agreement.  Attorney Fazendeiro explained that the Agreement

contained a confidentiality provision, which precluded her from disclosing such

information.  Consequently, Hayes' counsel suspended the deposition in order to seek relief from the court.

Hayes subsequently served document requests upon the defendants in which she sought, among other things, production of the Georges Settlement Agreement.  In addition, Hayes made a public records request for the document pursuant to the Massachusetts public records law, Mass. Gen. Laws ch. 66, § 10.  However, BPHC took the position that the document is confidential and not subject to disclosure under the public records law because it falls within the scope of the statute's so-called "privacy exemption."  Accordingly, it denied the plaintiff's public records request and has continued to withhold the Settlement Agreement from production in this case.

The matter is presently before the court on the "Plaintiff's Emergency Motion to Compel Production of Public Document and Testimony Thereon" (Docket No. 25), by which Hayes is seeking an order compelling the production of the Georges Settlement Agreement, as well as deposition testimony pertaining to the Settlement Agreement.[1] The plaintiff argues that the Settlement Agreement is a public document under the Massachusetts public records law, and is therefore subject to disclosure notwithstanding the presence of a confidentiality provision.  The defendants maintain that the Settlement Agreement is exempt from disclosure under the public records law, and that they have no statutory duty to disclose it.  They further argue that the attorney-client privilege shields

---

[1]  Neither party has submitted a copy of the Settlement Agreement to this court for review.

Attorney Fazendeiro from testifying about the substance of the Georges settlement, and that in any event, Hayes has failed to demonstrate that the information she is seeking is relevant to the parties' claims and defenses in this case.

For all the reasons detailed herein, this court finds that the terms and conditions of the Georges Settlement Agreement are not relevant to the parties' claims and defenses in this litigation.  Accordingly, Hayes' motion to compel is DENIED.[2]  With respect to the question whether the Settlement Agreement or any part thereof is a public record, this court finds, for the reasons described below, that the issue is not easily resolved.  Given this court's conclusion that the Settlement Agreement is not relevant to this case, the determination as to whether it should be disclosed under the public records law should be made at the administrative level,[3] or if necessary by the state courts, pursuant to Mass. Gen. Laws ch. 66, § 10(b).

---

[2]  Hayes also requests that this court award her attorney's fees that she incurred in connection with the filing of her motion.  Because this court finds that Hayes is not entitled to relief with respect to the substantive aspects of her motion, her request for fees is denied and it is unnecessary to address this issue further.

[3]  The plaintiff has submitted correspondence showing that after she filed the present motion to compel, she appealed BPHC's decision to deny her public records request to the Massachusetts Supervisor of Records, who upheld BPHC's decision.  (See Docket No. 39).  However, as explained in his letter denying Hayes' appeal, the Supervisor of Records declined to render an opinion as to whether or not the Settlement Agreement falls within the privacy exemption to the public records law.  Instead, the Supervisor of Records determined that as long as the Settlement Agreement is the subject of the present motion to compel, and is therefore "the subject of an active legal dispute in federal court between [Hayes] and the Commission[,]" it will fall within exemption (d) to the public records law, which "has been found to apply to unresolved matters to which litigation is imminent or active."  (Docket No. 39-6).  Therefore, it appears that this court's resolution of the motion to compel will enable Hayes to pursue relief at the administrative level.

## II.  DISCUSSION

### A.  Relevance

As described above, Hayes has moved to compel the production of and testimony about a Settlement Agreement that BPHC entered into with an employee who has no involvement in this case.  The defendants contend that Hayes' motion should be denied because the plaintiff has failed to establish that the terms of the Georges Settlement Agreement are relevant to the litigation.  (Def. Opp. Mem. (Docket No. 28) at 8-10).  Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a party to a lawsuit "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  Fed. R. Civ. P. 26(b)(1).  For discovery purposes, evidence is relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence."  Id. Because Hayes has failed to establish that the Georges Settlement Agreement satisfies this requirement, her motion to compel must be denied.

As an initial matter, Hayes has not established that the Georges Settlement Agreement has any relationship to her claims against the defendants in this action.  In this action, Hayes alleges that the defendants discriminated against her on the basis of her race by passing her over for a promotion and appointing a less-qualified woman of color as BPHC's General Counsel.  (See Am. Compl. (Docket No. 23), Counts I-II).  She also claims that the defendants acted unlawfully by terminating her employment with BPHC in retaliation for her efforts to seek legal recourse for the alleged discrimination.  (See id., Counts III-V).  In the Georges matter, Georges, a gay EMT, claimed that he was denied

work as a domestic violence counselor because officials wanted the unit to be made up of heterosexual women.  (Pl. Reply Mem. (Docket No. 33), Ex. A at 1).  He also claimed that he suffered harassment by co-workers and superiors in the Emergency Medical Services division of BPHC after he filed complaints of discrimination with the MCAD. (Id. at 2).  Thus, although Georges' lawsuit, like the present litigation, involved allegations of discrimination and retaliatory conduct, the alleged conduct was unrelated to Georges' race and did not involve the individuals who are named as defendants here.

Even if the facts of the Georges litigation were comparable to the facts alleged in this matter, Hayes has not shown that the Settlement Agreement is likely to lead to the discovery of admissible evidence.  Settlement agreements reflect compromises that have been negotiated between parties to a litigation.  They do not determine the outcome of factual disputes or establish an evidentiary record.  Therefore, discovery of the Georges Settlement Agreement would not reveal any facts that could be used by Hayes to prove her claims against the defendants.  Furthermore, parties choose to settle cases for many different reasons based on the particular circumstances of the case.  Therefore, information as to how BPHC defended or settled claims brought against it in another litigation would reveal little if anything about its defenses in this action.

Nevertheless, Hayes argues that the Georges Settlement Agreement is relevant in light of BPHC's claim that she was terminated from employment for revealing the specific terms and conditions of that Agreement to her present litigation counsel.  (Pl. Reply Mem. at 9-10).  This court disagrees. The issue as to whether Hayes was

terminated because she accessed the Settlement Agreement and revealed it to her counsel or whether, as Hayes claims, she was terminated in retaliation for her complaints of discrimination, does not require disclosure of the Agreement's contents.  Although facts about how Hayes might have used the document may be relevant to the parties' dispute, the plaintiff has not shown how the substance of BPHC's settlement with Georges will reveal anything about the defendants' true intent with respect to her.  Accordingly Hayes has not demonstrated that she is entitled to an order from this court compelling the disclosure of the Georges Settlement Agreement or testimony regarding its terms.[4]

### B.   Application of The Massachusetts Public Records Law

Because this court's ruling on relevance is dispositive of the pending motion, it is unnecessary for this court to consider the applicability of the Massachusetts public records law to the instant dispute.  Nevertheless, in light of the parties' focus on the public records law, some comments are warranted.  As described below, it is far from clear based on the present record whether the production of the Settlement Agreement, in whole or in part, is authorized under the public records law.  Therefore, it would be more appropriate for the matter to be resolved at the state level, through the process set forth in Mass. Gen. Laws ch. 66, § 10(b), which establishes a process for appealing a denial of a public records request.  See note 3, supra.

---

[4]  In light of this conclusion, this court will not address the defendants' argument that the attorney-client privilege precludes Hayes from examining Attorney Fazendeiro regarding the substance of the Georges Settlement Agreement.

### The Public Records Law

The Massachusetts public records law, Mass. Gen. Laws ch. 66, § 10, "opens records made or kept by a broad array of governmental entities to public view."  Suffolk Constr. Co., Inc. v. Div. of Capital Asset Mgmt., 449 Mass. 444, 452-53, 870 N.E.2d 33, 40 (2007).  As the statute provides in relevant part:

> Every person having custody of any public record ... shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee.

Mass. Gen. Laws ch. 66, § 10.  "The primary purpose of G.L. c. 66, § 10, is to give the public broad access to governmental records."  Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester, 436 Mass. 378, 382-83, 764 N.E.2d 847, 851 (2002).  Thus, the public records law reflects "the Legislature's considered judgment that the public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner, and that greater access to information about the actions of public officers and institutions is increasingly an essential ingredient of public confidence in government."  Suffolk Constr. Co., Inc., 449 Mass. at 453, 870 N.E.2d at 41 (quotations, citations and punctuation omitted).  In the instant case, there is no dispute that BPHC is a governmental agency, which is generally required under the public records law to produce public records on request.  (See Def. Opp. Mem. at 3).  At issue is

whether the Georges Settlement Agreement is protected from disclosure because it falls within the scope of the statute's privacy exemption.

The term "public record" is broadly defined in the public records statute to "include all documentary materials made or received by an officer or employee of any corporation or public entity of the Commonwealth unless one of [the] statutory exemptions is applicable."[5]  Wakefield Teachers Ass'n v. Sch. Comm. of Wakefield, 431 Mass. 792, 796, 731 N.E.2d 63, 66 (2000).  One of those exemptions, known as the "privacy exemption," covers  "personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy[.]"  Mass. Gen. Laws ch. 4, § 7, Twenty-sixth (c).  Accordingly, the privacy exemption "creates two categories of records exempt from public disclosure: first, 'personnel and medical files or information' and second 'other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.'"  Wakefield Teachers Ass'n, 431 Mass. at 796-97, 731 N.E.2d at 66-67 (quoting Globe Newspaper Co. v. Boston Ret. Bd., 388 Mass. 427, 434, 446 N.E.2d 1051 (1983)).  The defendants

---

[5] Specifically, the term "public records" is defined to mean "all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials fall within the [statute's enumerated] exemptions ...."  Mass. Gen. Laws ch. 4, § 7.

contend that the Georges Settlement Agreement is protected from mandatory disclosure under each of these categories.

Where, as here, "a dispute over a withheld document is brought to court, the [public records] statute establishes a clear 'presumption that the record sought is public' and places the burden on the record's custodian to 'prove with specificity the exemption which applies' to withheld documents." Suffolk Constr. Co., Inc., 449 Mass. at 454, 870 N.E.2d at 41 (quoting Mass. Gen. Laws ch. 66, § 10(c)). "To the extent that only a portion of a public record may fall within an exemption to disclosure, the nonexempt 'segregable portion' of the record is subject to public access." Worcester Telegram & Gazette Corp., 436 Mass. at 383, 764 N.E.2d at 852 (quoting Mass. Gen. Laws ch. 66, § 10(a)). While there is support for the plaintiff's assertion that settlement agreements are generally deemed to be public records subject to mandatory disclosure, it appears that at least some portion of the Georges Settlement Agreement is likely to fall within the scope of the privacy exemption.

### Application of the Public Records Law to Settlement Agreements

The plaintiff has shown that as a general matter, settlement agreements entered into by government entities such as BPHC are "documentary materials made or received by an officer or employee of any . . . public entity of the Commonwealth" and therefore meet the statutory definition of a public record. See Wakefield Teachers Ass'n, 431 Mass. at 796, 731 N.E.2d at 66. This conclusion is consistent with the statutory presumption in favor of disclosure, as well as with case law from Massachusetts and

elsewhere in which courts have construed settlement agreements in which one of the

parties is a public entity as public records under the state's public records statute.  <u>See,</u>

<u>e.g.</u>, <u>Bazelton v. Town of S. Hadley</u>, Civil Action No. 11-212 (Mass. Super. Ct. Dec. 23,

2011) (rejecting defendant's argument that "settlement documents are not public records

because no public funds were used to settle the case");[6] <u>State ex rel. Findlay Publ'n Co.</u>

<u>v. Hancock County Bd. of Comm'rs</u>, 80 Ohio St. 3d 134, 136-37, 684 N.E.2d 1222, 1224

(1997) (finding that in general, settlement agreements involving public offices are public

records subject to disclosure under state's public records law), and cases cited.  It is also

consistent with the Commonwealth's own "Guide to the Massachusetts Public Records

Law," which is published by the Division of Public Records.  Therein, the Secretary of

the Commonwealth has declared that "exemptions to the Public Records Law will not

operate to allow for the withholding of settlement agreements as a whole."  (Pl. Reply

Mem., Ex. B at 14).  Thus, while the Secretary has explained that "portions of [those]

agreements . . . may be redacted pursuant to specifically-cited exemptions to the Public

Records Law[,]" he has determined that settlement agreements remain subject to

mandatory disclosure pursuant to Mass. Gen. Laws ch. 66, § 10.  (<u>Id.</u>).

    Furthermore, courts that have considered the question whether a settlement agree-

ment must be disclosed as a public record under their state's public records law have

determined that disclosure is warranted even where the agreement contains a confiden-

---

[6] The <u>Bazelton</u> case is attached as Exhibit A to the plaintiff's emergency motion to compel.  (Docket No. 25-1).

tiality provision. See, e.g., State ex. rel. Findlay Publ'g Co., 80 Ohio St.3d at 137, 684

N.E.2d at 1225 (holding that confidentiality provision did not alter the public entity's

obligation to disclose a settlement agreement under Ohio's public records law); Guy

Gannett Publ'g Co. v. Univ. of Me., 555 A.2d 470 (Me. 1989) (holding that with the

exception of one sentence containing medical information, settlement agreement

containing confidentiality provision was subject to disclosure under Maine's public

records law); Hechler v. Casey, 175 W.Va. 434, 444, 333 S.E.2d 799, 809 (1985)

(holding that "an agreement as to confidentiality between the public body and the

supplier of information may not override the [state] Freedom of Information Act").  As

one such court has explained, "to allow the government to make documents exempt by

the simple means of promising confidentiality would subvert [the public records statute's]

disclosure mandate."  Hechler, 175 W.Va. at 444, 333 S.E.2d at 809.  Accordingly, the

presence of a confidentiality provision in the Georges Settlement Agreement is

insufficient to shield the Agreement from disclosure under the public records law.

## Exemption for Personnel Information

The defendants nevertheless argue that the Georges Settlement Agreement is

exempt from disclosure because it "is a personnel file and/or contains personnel infor-

mation."  (Def. Opp. Mem. at 4).  Under the public records law, "personnel files or

information are absolutely exempt from mandatory disclosure where the files or infor-

mation are of a personal nature and relate to a particular individual."  Globe Newspaper

Co., 388 Mass. at 438, 446 N.E.2d at 1058.  While the term "personnel files or infor-

mation" is not defined in the statute, and "may require case-by-case articulation, it includes, at a minimum, employment applications, employee work evaluations, disciplinary documentation, and promotion, demotion, or termination information pertaining to a particular employee." Wakefield Teachers Ass'n, 431 Mass. at 798, 731 N.E.2d at 67. As the Massachusetts Supreme Judicial Court has explained, these types of documents "constitute the core categories of personnel information that are 'useful in making employment decisions regarding an employee.'" Id. (quoting Oregonian Publ. Co. v. Portland Sch. Dist. No. 1J, 329 Or. 393, 401, 987 P.2d 480 (1999)).

In the instant case, it appears that at least a portion of the Georges Settlement Agreement may qualify as personnel information that is exempt from disclosure. See Mass. Gen. Laws ch. 66, § 10(a) (recognizing that only part of state records may be public). According to the defendants, the Agreement did not just resolve Georges' claims against the BPHC, but also "govern[s] the parties' ongoing relationship moving forward[,]" including matters relating to "Georges' continuing employment status and pay, the status of discipline and other information contained in his personnel file, and his ability to be promoted, to continue to earn benefits, and to be employed by BPHC in the future." (Def. Opp. Mem. at 4). To the extent the Settlement Agreement contains information that would not only be useful, but would likely also prove critical, to any employment decisions that BPHC may make about Georges in the future, it would be entitled to protection. Therefore, it is appropriate to present the issue of whether there

are parts of the Settlement Agreement which are entitled to protection as personnel

information to the administrative entity tasked with enforcing the public records law.

### The Personal Privacy Exemption

The defendants also assert that the Georges Settlement Agreement falls within the

second category of records that are exempt from public disclosure under Mass. Gen.

Laws ch. 4, § 7, Twenty-sixth (c) because "it relates 'to a specifically named individual,

the disclosure of which may constitute an unwarranted invasion of personal privacy.'"

(Def. Opp. Mem. at 5 (quoting  Wakefield Teachers Ass'n, 431 Mass. at 797, 731 N.E.2d

at 67)).  Unlike the exemption for personnel files and information, an analysis as to

whether the personal privacy exemption applies "requires a balancing between the

seriousness of any invasion of privacy and the public right to know."  Attorney Gen. v.

Collector of Lynn, 377 Mass. 151, 156, 385 N.E.2d 505, 508 (1979).  "Where the public

interest in obtaining information substantially outweighs the seriousness of any invasion

of privacy, the private interest in preventing disclosure must yield to the public interest."

Id.  Thus, "the public right to know should prevail unless disclosure would publicize

intimate details of a highly personal nature."  Assistant Comm'r of Real Prop. Dep't of

Boston, 380 Mass. 623, 625-26, 404 N.E.2d 1254, 1256 (1980) (quoting Collector of

Lynn, 377 Mass. at 157, 385 N.E.2d at 508).  Again, resolution of this issue based on the

present record is far from clear.

Admittedly, there is considerable support for the proposition that the public has an interest in the financial terms of the parties' settlement.  As the Secretary of the Commonwealth has explained in "A Guide to the Massachusetts Public Records Law,"

> [t]he public interest in the financial information of a public employee outweighs the privacy interest where the financial compensation in question is drawn on an account held by a government entity and comprised of taxpayer funds. Additionally, the disclosure of the settlement amount would assist the public in monitoring government operations.

(Pl. Reply Mem., Ex. B at 14).  See Hastings  & Sons Publ'g Co. v. City Treasurer of Lynn, 374 Mass. 812, 818, 375 N.E.2d 299, 304 (1978) (finding that public's right "to know what its public servants are paid must prevail" over any privacy interest in payroll records).  Thus, there is support for the proposition that the disclosure of any amounts that Georges was paid by BPHC as part of his settlement would serve the public "interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner."  Collector of Lynn, 377 Mass. at 158, 385 N.E.2d at 509.

On the other hand, it is difficult to determine based on the present record whether the disclosure of the Settlement Agreement would involve an unwarranted invasion of Georges' personal privacy.  As described above, the Agreement contains a confidentiality provision, which suggests that Georges had an expectation that the details of his settlement would remain confidential.  Additionally, Georges' claims against BPHC included allegations of discrimination based on Georges' sexual orientation.  This suggests that the Settlement Agreement may contain "intimate details of a highly personal nature."  See

-15-

Assistant Comm'r of Real Prop. Dep't of Boston, 380 Mass. at 625-26, 404 N.E.2d at 1256 (quotations and citation omitted).  Although this court is mindful that Georges, as a public employee, has a "diminished expectation of privacy[,]" see Pottle v. Sch. Comm. of Braintree, 395 Mass. 861, 866, 482 N.E.2d 813, 817 (1985), and there is evidence that Georges disclosed details of his allegations to The Boston Globe in connection with an article that was published on October 31, 2011 (Pl. Reply Mem., Ex. A), there is no indication that Georges has approved of the Settlement Agreement's disclosure or has had an opportunity to be heard on the matter.  These factors will have to be evaluated and balanced in order to determine if all or part of the Settlement Agreement should be disclosed.

## III.  CONCLUSION

For all the reasons detailed herein, this court finds that the substance of the Georges Settlement Agreement is not relevant to the claims and defenses raised by the parties in this case.  Accordingly, the "Plaintiff's Emergency Motion to Compel Production of Public Document and Testimony Thereon" (Docket No. 25) is DENIED.


    / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

-16-